UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELISSA W.,

                Plaintiff,

v.                                     CASE NO. 1:22-cv-00891
                                     (JGW)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the
undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).
The matter is presently before the Court on the parties' cross-motions for judgment on
the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 7, 9),
as well as Plaintiff's reply brief (Doc. 10). Upon review of the administrative record and
consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 7)
is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**,
and the decision of the Commissioner is **AFFIRMED**.

## I.    RELEVANT BACKGROUND

### A.    Procedural Background

On January 6, 2020, Plaintiff protectively filed an application for supplemental
security income, alleging disability beginning October 1, 2018.  (Tr. 61.)  Plaintiff's claim

was denied initially on September 11, 2020, and upon reconsideration.[1]  (Tr. 60, 61-71, 72-90, 91.)  She then timely requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 124-138.)  Plaintiff appeared with counsel for a telephonic hearing before ALJ Mary Mattimore.  (Tr. 32-59.)  On September 24, 2021, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 12-31.)  The Appeals Council denied her request for review, (Tr. 1-6), and Plaintiff timely filed her appeal to this Court.

### B.    Factual Background[2]

Plaintiff was born on July 25, 1982 and alleged a disability onset date of October 1, 2018.  (Tr. 61.)  Plaintiff has limited education, having only finished through eleventh grade in high school.  (Tr. 47.)  Initially, Plaintiff described that she was disabled because of manic depressive condition and PTSD.  (Tr. 62.)  During the hearing, she testified as to her depression and anxiety.  (Tr. 40-52.)

Plaintiff described that she is unable to work because she cannot physically enter the building due to "feeling like [she] can't breathe, [she] start[s] getting tunnel vision" and has passed out.  (Tr. 40.)  She indicated that she feels like she does not learn as quickly as everyone else, and she becomes embarrassed to ask for help because she feels like she is "too stupid."  (Tr. 41.)

Plaintiff described that she has anxiety and experiences panic attacks, which makes her feel like she cannot breathe, her heart palpitates, she feels panicky, like she is going to pass out, and her vision starts going black.  (Tr. 50.)  She indicated she

---

[1] Although the ALJ's decision identifies the reconsideration decision date as December 15, 2020, the Disability Determination and Transmittal document reflects a decision date of December 14, 2020. (Tr. 91.)

[2] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

experiences panic attacks four or five times a day. (Tr. 50-51.)  She explained that these attacks can last anywhere from a few minutes to an hour and are prompted by any thoughts of leaving her home and going into public or going to work, or interaction with people, including making phone calls.  (Tr. 51.)

Plaintiff testified that she lives with her three daughters, ages 2, 4, and 14. (Tr. 38-39.)  Her mother helps her take care of them.  (Tr. 39.)  On a typical day, she stays home in her room and cares for her children when she can.  (Tr. 44.)  When her depression is intense, her mother will stay with her to help care for the children.  (*Id.*)  Her mother also does the cooking and cleaning when she is there, and when she is not, her children contribute.  (Tr. 45.)  Plaintiff explained that her oldest daughter generally cooks and prepares meals, and she and the children (and her mother when there) will share doing the laundry and dishes.  (*See id.*)  Plaintiff also indicated that she does help when she feels able.  (*See id.*)

Plaintiff admitted she has never had a driver's license, because driving gives her anxiety.  (Tr. 39.)  She described that she is terrified of a car accident and even going on the road.  (*See id.*)   Accordingly, she walks to most places, or has her mother or grandfather drive her if necessary.  (Tr. 39-40.)  She does not take public transportation generally, as being around people "gets to [her]."  (Tr. 40.)

In fact, she stays home most of the time and does not go out in public.  (Tr. 49.)  She does not like when people stare at her, and she has previously caused a verbal altercation that resulted in her arrest when she thought someone was staring at her.  (Tr. 48-49.)  She also explained that she only goes to the store, approximately once a week, and also to her doctor's appointments, although sometimes she does not make her

doctor's appointments because she lacks energy.  (Tr. 49, 50.)  Plaintiff explained that

she attends mental health counseling at least once a week, sometimes twice weekly.  (Tr.

44-45.)  She described that going to the store was difficult, and being in a crowd causes

her to "get nasty and mean with people."  (Tr. 51.)  She explained she has not gone

anywhere alone in years because it is too overwhelming, and it stresses her out.  (Tr. 51-

52.) She does not go to her children's school for anything, as their grandmother handles

that for her.  (Tr. 49.)

She indicated she takes medication for her conditions, which makes her tired.  (Tr.

46.)  She has never been hospitalized for any of her mental health conditions.  (*See id*.)

Plaintiff also described that in her past work experience as a certified nurse

practitioner, she mostly stayed to herself and had little interaction with the families of her

nursing patients, but she indicated that she got along fine with the family when she did

interact with them.  (Tr. 47.)

## C.    ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and

conclusions of law.

1.  The claimant has not engaged in substantial gainful activity since January 6, 2020, the application date (20 CFR 416.971 *et seq*.). (Tr. 17.)

2.  The claimant has the following severe impairments: obesity; affective disorder; anxiety disorder; panic disorder; mood disorder; and post-traumatic stress disorder (PTSD) (20 CFR 416.920(c)).  (Tr. 17.)

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (Tr. 18.)

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all

exertional levels but with the following nonexertional limitations: Can perform simple routine work and make simple workplace decisions, not at a production rate pace (assembly line pace); can tolerate minimal changes in workplace processes and settings and occasional interaction with supervisors, coworkers and the public; cannot perform tandem or team work. (Tr. 20.)

5. The claimant is unable to perform any past relevant work (20 CFR 416.965). (Tr. 24.)

6. The claimant was born on July 25, 1982 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963). (Tr. 25.)

7. The claimant has a limited education (20 CFR 416.964). (Tr. 25.)

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 25.)

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a). (Tr. 25.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d

Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

  **B. Standard to Determine Disability**

  To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

  At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is

unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.    ANALYSIS

Plaintiff identifies two bases for remand.[3]  First, Plaintiff argues that the ALJ failed to reconcile the more restrictive portions of certain medical opinions with her RFC. Second, Plaintiff argues that the ALJ failed to properly evaluate certain medical opinions by finding them to be of equal persuasiveness but not considering the additional regulatory factors.  The Court will address these arguments in turn.

### A.    The ALJ Properly Evaluated the Medical Opinions When Crafting her RFC.

A claimant's RFC is the most she can still do despite her limitations and is based on all relevant evidence in the record.  *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996).  The regulations explicitly

---

[3] Neither party challenges the ALJ's findings pertaining to Plaintiff's physical impairments, limiting the issues to Plaintiff's mental impairments.  The Court notes that the ALJ found obesity as a severe impairment, although it was not alleged by Plaintiff as an impairment or testified to during the hearing.  Further, the Court notes that, in her analysis of the RFC, the ALJ concluded her discussion of physical impairments by stating "[i]n combination with her other impairments and consistent with her testimony, obesity affects her exertional ability to the degree that she can do no more than light work."  (Tr. 23.)  The Court recognizes this statement as potentially inconsistent with the ALJ's RFC finding that Plaintiff can perform work at all exertional levels with certain nonexertional limitations.  (*See* Tr. 20.)  However, Plaintiff did not raise this issue in her brief to the Court; instead, she focused her issues and arguments solely on her mental impairments.  (*See* doc. 7-1 at 1) (identifying the issues presented).  As such, the Court finds that she has waived any arguments regarding her physical impairments and will focus its analysis on the issues raised by Plaintiff, which relate to her mental impairments.  *See Poupore v. Astrue*, 566 F.3d 303, 306–07 (2d Cir. 2009) (exercising discretion to treat arguments as waived when not raised in the opening brief to the district court); *Patterson v. Saul*, No. 19-CV-465F, 2020 WL 5642187, at *4 (W.D.N.Y. Sept. 22, 2020) ("Preliminarily, the court observes that Plaintiff limits his arguments to his mental impairments. Accordingly, the court finds Plaintiff has waived any challenge to the ALJ's Decision based on any physical impairments."); *Glover v. Saul*, 2020 WL 90768, at * 5 (W.D.N.Y. Jan. 8, 2020) (same).

provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo*, 31 F.4th at 78.  Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  "An ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence*."  Rebecca B. v. Comm'r of Soc. Sec.*, 22-cv-00631-HKS, 2025 WL 90625, *4 (W.D.N.Y. Jan. 14, 2025) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).

### 1.    Plaintiff's Arguments

Plaintiff argues generally that the ALJ found the opinions of Drs. Noia, Lieber-Diaz, and Juriga persuasive, but yet failed to reconcile the RFC with the more limited portions of these opinions.  (*See* doc. 7-1 at 8.)  With respect to Dr. Noia's opinion, Plaintiff argues that the ALJ failed to reconcile Dr. Noia's opinion that Plaintiff had mild limitations sustaining an ordinary routine and regular attendance at work. (*See id.* at 10.)

Plaintiff's argument as to Dr. Lieber-Diaz's opinion is substantively similar.  (*See id.* at 12.)  Specifically, Plaintiff argues that the ALJ failed to reconcile the RFC with Dr. Lieber-Diaz's opinion that Plaintiff was moderately limited in certain pace and

concentration functions, including maintaining a schedule and regular attendance, being generally punctual, completing a normal workday and workweek without interruptions from her conditions, performing at a consistent pace without unreasonable breaks, and maintaining socially appropriate behavior and appearance. (*See id.*) Plaintiff contends the ALJ's failure to include the limitations identified by Drs. Noia and Lieber-Diaz was harmful error because, if Plaintiff exceeded the one absence allowed per month or the 10% off task behavior permitted per day, a finding of disabled would be required. (*See id.* at 10-11, 13.)

Finally, Plaintiff contends that the ALJ erred by failing to reconcile the RFC with Dr. Juriga's opinion that Plaintiff would be limited to brief and superficial contact with coworkers and the public. (*See id.* at 11.) While Plaintiff acknowledges that the ALJ limited her to occasional interaction with coworkers and the public, Plaintiff contends that "brief and superficial contact is less than occasional interaction," rendering the ALJ's RFC erroneous. (*See id.*)

## 2.    The Opinions at Issue and the ALJ's Analysis

### a.    Dr. Noia's Opinion

The ALJ accurately summarized Dr. Noia's opinion in her decision as follows:

Dennis Noia, Ph.D., evaluated the claimant on September 2, 2020, at the request of the State Agency. The claimant reported a long history of outpatient therapy since 2008, as well as a hospitalization in 2014 for anorexia. She reported having difficulty sleeping but her appetite was normal. A mental status examination noted that the claimant's memory, attention and concentration were intact. Insight and judgement were good. She was able to dress, bathe and groom independently. She could cook, clean, do laundry and manage money. She did not drive or use public transportation. When she goes grocery shopping, she goes in and leaves quickly because of panic attacks. She got along with her family. She spent her day doing chores, taking care of her children, watching television and reading. Dr. Noia opined the claimant had no limitations for performing

simple and complex tasks and using reasoning and judgement to make work-related decisions. She had moderate limitations interacting with supervisors, coworkers and the public. There was no evidence of limitation for sustaining attention and concentration and performing tasks at a consistent pace. She had a mild limitation sustaining an ordinary routine and regular attendance at work. She had a moderate limitation regulating emotions, controlling behavior, and maintaining well-being.

(Tr. 22) (internal citations omitted).

The ALJ evaluated Dr. Noia's opinion, finding it persuasive:

Dr. Noia (Exhibit 5F) reported moderate limitations for interactions and mild limitations for adhering to a routine and maintaining attendance. She also had moderate limitations for regulating emotions, controlling behavior and maintaining well-being. Her psychiatric limitations are significant enough to at times interfere with daily activities. This opinion is persuasive because it is supported by and consistent with an in-person examination and is also consistent with the record as a whole, specifically the unremarkable mental status examinations (see e.g. Exhibits 1F,23F). The claimant had no hospitalizations for mental health (Exhibit 1F, p. 23).

(Tr. 24.)

### b.      Dr. Lieber-Diaz's Opinion

Dr. Lieber-Diaz provided an opinion at the reconsideration level.  (*See* Tr. 80-87.) In the "PRT – Additional Explanation" section, Dr. Lieber-Diaz noted that there were "no new psychiatric allegations of a worsening of any previously documented impairments." (Tr. 81.)  She further acknowledged there were no allegations of any new impairments, nor were there any new treatment records since the prior determination.  (*See id.*)  Finally, she concluded "[b]ased upon a review of the available MER [medical evidence of record], the [Plaintiff] would be capable of unskilled work in a setting that has limited contact with others."  (*See id.*)

Dr. Lieber-Diaz further opined that Plaintiff had understanding and memory limitations, but none were significant.  (Tr. 84.)  Next, she concluded that Plaintiff had

sustained concentration and persistence limitations, finding moderate limitations in the ability to: (1) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," (2) "work in coordination with or in proximity to others without being distracted by them," and (3) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (Tr. 85.) Dr. Lieber-Diaz also opined Plaintiff had social interaction limitations, identifying moderate limitations in the ability to: (1) interact appropriately with the general public;" (2) "get along with coworkers or peers without distracting them or exhibiting behavioral extremes;" and (3) "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness."  (Tr. 86.)   Finally, Dr. Lieber-Diaz identified adaptation limitations, concluding that Plaintiff was moderately limited in the ability to: (1) "respond appropriately to changes in the work setting" and (2) "travel in unfamiliar places or use public transportation."  (Tr. 87.)

The ALJ found Dr. Lieber-Diaz's opinion persuasive, noting:

> Dr. Diaz (Exhibit 3A) found moderate limitations for travel[,] attendance, interactions and performing a normal workday. This opinion is also persuasive as it is supported by the record review and consistent with the medical evidence of record as a whole.

(Tr. 24.)

### c.    Dr. Juriga's Opinion

Dr. Juriga opined that Plaintiff had no limitations in understanding and memory, as well as sustained concentration and persistence. (Tr. 68-69.)  Dr. Juriga acknowledged limitations in social interaction, specifically finding that Plaintiff was moderately limited in the ability to: (1) interact appropriately with the general public and (2) get along with

coworkers or peers without distracting them or exhibiting behavioral extremes.  (Tr. 68.)

Dr. Juriga further identified limitations in Plaintiff's adaptation abilities, concluding that she

was moderately limited in the ability to: (1) respond appropriately to changes in the work

setting, (2) travel in unfamiliar places or use public transportation, and (3) set realistic

goals or make plans independently of others.  (Tr. 69.)  He also stated in the PRT –

Additional Explanation section:

> Based on the totality of the evidence, claimant's ability to deal with co-
> workers and the public would be somewhat reduced, but adequate to
> handle brief and superficial contact. Similarly [her] ability to tolerate and
> respond appropriately to supervision would be reduced, but adequate to
> handle ordinary levels of supervision in the customary work setting.

(Tr. 66.)

The ALJ also found Dr. Juriga's opinion persuasive, noting:

> Dr. [Juriga] (Exhibit 2A) reported moderate limitations with interactions and
> setting goals, travel and changes in work settings. This opinion is
> persuasive as it is supported by the record review and consistent with the
> medical evidence of record as a whole.

(Tr. 24.)

### 3.  The Court's Analysis

The Court has carefully reviewed the record and concludes that the ALJ did not err

in formulating her RFC or in reconciling the medical opinions with the RFC.  In fact, the

RFC was consistent with the medical opinions identified by Plaintiff, and thus no

reconciliation was required.

To begin, the Court notes that the restriction in Dr. Noia's opinion was a "mild

limitation sustaining an ordinary routine and regular attendance at work."  By definition, a

mild limitation represents only a slight limitation in functioning.  *See* 20 CFR 404, Subpart

P, Appendix 1, Sec. 12.00(F)(2)(b).  Accordingly, an ALJ need not translate a mild

limitation into an RFC limitation. *See Kendra C. v. Comm'r of Soc. Sec.*, No. 21-CV-1131MWP, 2024 WL 1242413, at *10 (W.D.N.Y. Mar. 22, 2024) (recognizing that "if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not necessarily err by formulating an RFC without mental limitations or restrictions"); *Grace M. v. Comm'r of Soc. Sec.*, No. 20-CV-1023SR, 2022 WL 912946, at *3 (W.D.N.Y. Mar. 29, 2022) (noting that "even though mild limitations may cause functional restrictions, such limitations do not compel the inclusion of mental limitations in the RFC").

Nonetheless, ALJ Mattimore did, in fact, incorporate the limitations regarding routine and regular attendance at work offered by both Drs. Noia and Lieber-Diaz into the RFC by limiting Plaintiff to simple and unskilled work. *See Kristina L.H. v. Comm'r of Soc. Sec.*, No. 22-cv-605Sr, 2025 WL 959827, at *8 (W.D.N.Y. Mar. 31, 2025) (recognizing that "a moderate limitation in the ability to sustain an ordinary routine and attendance can be addressed with an RFC that limits a plaintiff to simple, routine tasks") (internal citation omitted); *Koza v. Comm'r of Soc. Sec.*, 692 F. Supp. 3d 197, 204 (W.D.N.Y. 2023) (same); *see also Melisa G. v. Berryhill*, Civ. No. 3:18-cv-508 (DJS), 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (recognizing that moderate limitations in attention and concentrate, performing activities in a schedule, and maintaining regular attendance do not preclude unskilled work).

The Court similarly disagrees with Plaintiff's argument regarding Dr. Juriga's opinion, as the Court finds the difference in the language used in Dr. Juriga's opinion and the ALJ's RFC to be a distinction without a difference. Plaintiff provides no support for her contention that "brief and superficial" contact is more restrictive than "occasional"

contact.  Indeed, "occasional" in this context is defined as "very little up to one-third of the time."  SSR 96-9P (S.S.A. July 2, 1996) ("'Occasionally' means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday.")  The ALJ further limited Plaintiff to no tandem or team work.  Given the ALJ's restrictions regarding social interaction, the Court is not convinced that the RFC is inconsistent with Dr. Juriga's opinion.

Moreover, "unskilled work" would encompass even "brief and superficial" contact, as "unskilled work" generally involves work dealing primarily with objects, rather than people. *See* SSR 85-15, 1985 WL 56857, at * 4 (Jan. 1, 1985).  This limitation regarding contact with others was reflected in the jobs identified by the VE, which are all rated at people level of 8.  *See* Dictionary of Occupational Titles 318.687-010, 1991 WL 672755, at *1 (Jan. 1, 2016) (kitchen helper job has a people level of 8); Dictionary of Occupational Titles 209.587-034, 1991 WL 671802, at *1 (Jan. 1, 2016) (marker job has a people level of 8); Dictionary of Occupational Titles, 222.587-038, 1991 WL 672123, at *1 (Jan. 1, 2016) (router job has a people level of 8).  The level 8 designation "is described as 'attending to the work assignment instructions or order of supervisor[;] [n]o immediate response required unless clarification of instructions or orders is needed,' and the degree of relation to people is 'not significant.'' *Habschied v. Berryhill*, No. 17-CV-6217P, 2019 WL 1366040, at *9 (W.D.N.Y. Mar. 26, 2019) (internal citations omitted). *See also Race v. Comm'r of Soc. Sec.,* No. 114CV1357GTSWBC, 2016 WL 3511779, at *5 n. 4 (N.D.N.Y. May 24, 2016), *report and recommendation adopted,* No. 1:14-CV-1357, 2016 WL 3512217 (N.D.N.Y. June 22, 2016).

It is well-settled that an RFC need not mirror any one opinion in the record—even one the ALJ finds persuasive.  *See Schillo*, 31 F.4th at 78; *Matta*, 508 F. App'x at 56.  And here, the record evidence provides substantial evidence to support and is consistent with the ALJ's RFC.  In addition to the opinion evidence cited above, there are opinions in the record from two of Plaintiff's treating providers.  One opinion, from Blessing Ibezim, reflected that Plaintiff's depression and anxiety were stable without medication.  (Tr. 618.)  The other opinions from Plaintiff's therapist, Laura Sullivan, LCSW, reflected improvement over time and included restrictions consistent with the ALJ's RFC.  (Tr. 1227-32.)  Further, the record reflects generally normal mental examinations. (*See* Tr. 539, 744, 750-51, 763-64, 810, 813, 815, 826, 832, 854, 857, 1156, 1162, 1168, 1175, 1180-81.)  And Plaintiff continued to engage in many activities of daily living, including personal grooming and shopping, (*see* Tr. 66, 81, 226, 228, 539), caring for her children (*see* Tr. 226, 539), and household chores (*see* Tr. 539.)  She also participated in certain hobbies, such as reading (*see* Tr. 229) and talking with friends (*see id*.).  These facts demonstrate that Plaintiff was not disabled and support the ALJ's RFC determination.

### B.    The ALJ Properly Evaluated the Medical Opinions in the Record.

Plaintiff argues that the ALJ inadequately evaluated the medical opinions of Drs. Noia, Lieber-Diaz, and Juriga by: (1) failing to sufficiently address the supportability and consistency factors and (2) finding these opinions "equally persuasive," yet failing to analyze the additional requisite factors.  (*See* doc. 7-1 at 13.)  As such, Plaintiff argues that this Court cannot conduct a meaningful review of the RFC, rendering remand necessary.  (*See id.*)

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules"*), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well

supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

The Court does not agree with Plaintiff's argument that the ALJ did not adequately analyze the supportability and consistency factors.  While the Court acknowledges that the ALJ generally characterized each of the identified opinions as persuasive because they were supported by either the record review or examination as well as consistent with the medical evidence in the record, the Court notes that the ALJ's decision contains a detailed and thorough recitation and review of the medical evidence in this case.  (Tr. 21-24.)  The ALJ did not need to repeat the evidence in support of her conclusion, and Plaintiff does not identify any evidence that the ALJ failed to consider that rendered any of these opinions inconsistent with the record.  Although not extensive, this discussion adequately discharges her duty to discuss both consistency and supportability.  *See Rosario*, 2022 WL 819810, at *10 (generally discussing the ALJ's review of the records against the opinion and finding it "legally adequate").

Even if the ALJ's analysis of the supportability and consistency factors was insufficient, a procedural error, the Court could still affirm if "a searching review of the record assures us that the substance of the [regulation] was not traversed." *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (internal quotation marks and citations omitted).  The Court has reviewed the record and concludes that the

substance of the regulation was not traversed, and any procedural error was harmless. *See id.*

The Court similarly rejects Plaintiff's argument that the ALJ was required to analyze the additional factors beyond supportability and consistency.  An ALJ must analyze the additional factors set forth in the new regulations only when an ALJ finds medical opinions to be "equally persuasive." *See* 20 C.F.R. § 416.920c(b)(2)-(3); *see also Todd E. O. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1046 (CFH), 2022 WL 326629, at *14 n. 9 (N.D.N.Y. Feb. 3, 2022); *Amanda R. v. Comm'r of Soc. Sec.*, No. 6:20-CV-596, 2021 WL 3629161, at *6 (N.D.N.Y. Aug. 17, 2021) (quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021) ("Although the Regulations obligate the ALJ to explain how he or she considered the[ ] [supportability and consistency] factors, 'an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the same issue that differ slightly.'")).  Merely using the same descriptor for two or more opinions, i.e. "persuasive," does not mean that the ALJ found the opinions "equally persuasive."  *See Kelly B. R. v. Kijakazi*, No. 2:20-CV-00339-JHR, 2022 WL 204634, at *3–4 (D. Me. Jan. 23, 2022).  Indeed, to find two opinions "equally persuasive," an ALJ must find that that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same[.]"  *Id.* (quoting 20 C.F.R. § 404.1520c(b)(3).)  In this case, the ALJ did not make such a finding, nor did her analysis imply such a finding. Further, noted in the Court's above analysis, these opinions are very similar, were

incorporated in the RFC, and none would have supported a finding of disability.  The Court finds no error.

**IV.     CONCLUSION**

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 7) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**.

Dated: July 14, 2025                              J. Gregory Wehrman
Rochester, New York                            HON. J. Gregory Wehrman
                                                           United States Magistrate Judge